<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS J. GODDARD,

    Plaintiff,

    v.

INTERSERVER.NET *et al.*,

    Defendants.

No. 25cv3883 (EP) (MAH)

**OPINION**

**PADIN, District Judge.**

*Pro se* Plaintiff Thomas J. Goddard brings this action against Defendants Interserver.net, Host Department NJ, LLC, and Does 1-10 (collectively, "Defendants"). D.E. 1 ("Complaint" or "Compl."). Plaintiff also seeks to proceed *in forma pauperis*. D.E. 1-4 ("IFP Application"). Because Plaintiff demonstrates financial need, the Court will **GRANT** his IFP application. The Court must also screen the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) ("Section 1915"). For the reasons explained below, the Court will **DISMISS** the Complaint for failure to state a claim and **DENY** Plaintiff's request for injunctive relief.

**I.    BACKGROUND**

Plaintiff is a California-based technology professional, who until July 15, 2024, was employed as a Lead Staff Mobile Engineer at Slickdeals LLC. Compl. ¶¶ 4, 17. Plaintiff is also Jewish. *Id.* ¶ 18. The crux of Plaintiff's Complaint is that Defendants, through the website spotlighthate.com, "host, maintain, and refuse to remove [information] that falsely portrays Plaintiff as an anti-Muslim bigot and falsely attributes numerous inflammatory statements to him that he never made." *Id.* ¶ 2. In addition to attributing numerous statements concerning the Israeli-Palestinian conflict to Plaintiff, the website labels Plaintiff an "Anti-Muslim Bigot" and

"Islamophobe," which has damaged his reputation; Plaintiff alleges he "has never made any of these statements, harbors no such views, and strongly condemns any form of bigotry, hatred, or discrimination." *Id.* ¶¶ 22-23. Spotlighthate.com also uses a photograph of Plaintiff without his authorization. *Id.* ¶ 20.

It is not clear from the Complaint when this information was first publicized on spotlighthate.com, although the Court's best guess is sometime during July 2024, when Plaintiff lost his job and when his car was stolen. *See id.* ¶¶ 17, 30[1]. On March 10, 2025, Plaintiff sent a detailed "DMCA[2] takedown notice and defamation complaint" to Defendants in which he requested the immediate removal of the defamatory content and unauthorized use of his photograph. Compl. ¶ 24. A similar request Plaintiff made to X.com was granted. *Id.* ¶ 27. However, Defendants have not removed the defamatory content or responded to Plaintiff's outreach. *Id.* ¶ 26.

As a result of the defamatory content on spotlighthate.com, Plaintiff has suffered various harms, including wrongful termination from his job, difficulty securing comparable employment, harassment from strangers, severe emotional distress, and reputational damage. *Id.* ¶ 28. Also, Plaintiff's car was stolen, which, in his view, "suggest[s] a potential connection between the online defamation and real-world harassment targeting Plaintiff." *Id.* ¶ 30.

---

[1] "The theft of Plaintiff's car on or about July 12, 2024, occurred *shortly after* the defamatory content began circulating." *Id.* ¶ 30 (emphasis added).
[2] In relevant part, the Digital Millenium Copyright Act ("DMCA") provides that "'[n]o person shall knowingly and with the intent to induce, enable, facilitate, or conceal infringement'" provide or distribute copyright management information that is "'false.'" *Vcom Int'l Multi-Media Corp. v. Gluck*, No. 14-3398, 2017 WL 1137442, at *7 (D.N.J. Mar. 27, 2017) (quoting 17 U.S.C. § 1202(a)).

2

Based on the above, Plaintiff alleges five causes of action: (1) copyright infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* (the "Copyright Act");[3] (2) common law defamation; (3) misappropriation of likeness/right of publicity; (4) intentional infliction of emotional distress; (5) negligence. Compl. Plaintiff also filed an application for a temporary restraining order and preliminary injunction, *id.* at 65-70, as well as a disability accommodation pursuant to the Americans with Disability Act ("ADA") 42 U.S.C. § 12101 *et seq.*, *id.* ¶¶ 11-15.

## II.   LEGAL STANDARD

Under Section 1915, this Court may excuse a litigant from prepayment of fees when the litigant "establish[es] that he is unable to pay the costs of his suit." *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). However, courts must review an IFP plaintiff's complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune.[4] 28 U.S.C. § 1915(e)(2)(B). Under the screening determination, complaints may also be dismissed for failure to state a claim. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Rule 12(b)(6) standard to dismissal for failure to state claim under Section 1915(e)(2)(B)).

To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555

---

[3] Plaintiff alleges copyright infringement under 17 U.S.C. § 501.
[4] The Court's preliminary review pursuant to 28 U.S.C. § 1915 does not determine whether the allegations in the Complaint would survive a properly supported motion to dismiss filed by Defendants after service. *See Richardson v. Cascade Skating Rink*, No. 19-8935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment.") (internal quotation marks omitted).

(internal citation omitted). As Plaintiff proceeds *pro se,* the Court holds the Complaint to a less stringent standard than one drafted by an attorney. *Haines v. Kerner,* 404 U.S. 519, 520 (1972). However, the Court need not "credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).

III.     ANALYSIS

    A.     **Plaintiff's IFP Application**

Plaintiff declares that his income consists of $5,000 in monthly disability payments and that he has no assets. IFP Application at 4. Plaintiff also states that he has $5650 in monthly expenses from rent, utilities, car payments, car insurance, credit card payments, and phone payments. *Id.* Because Plaintiff sufficiently establishes his inability to pay, the Court will **GRANT** his IFP Application.

    B.     **Copyright Infringement**

The Copyright Act provides that "[a]nyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright or right of the author." 17 U.S.C. § 501(a). "Copying refers to the act of infringing any of the exclusive rights . . . as set forth at 17 U.S.C. § 106, 'including the rights to distribute and reproduce copyrighted material.'" *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005) (quoting *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)). To prevail on a copyright infringement claim, a plaintiff must establish: "(1) ownership of a valid copyright; and (2) unauthorized copying of original elements of the plaintiff's work." *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002).

As a threshold matter, Plaintiff fails to show that he owns a valid copyright, an essential element to a copyright infringement action. *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 450 (E.D. Pa. 2015) (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361, 111 (1991)). "Section 411 of the Copyright Act requires that a plaintiff must have a registered copyright before filing an infringement claim based upon that copyright." *Id.* (cleaned up). While it is true that "an owner's rights exist apart from registration, . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights." *Fourth Estate Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019).

But it is not clear from the face of the Complaint whether Plaintiff has a registered copyright for the photo at issue. At one point, Plaintiff alleges "he holds the copyright" of the photo of himself on spotlighthate.com,[5] but later in the Complaint, Plaintiff states the photograph is "copyright*able* under federal law."[6] Nowhere does Plaintiff clearly allege that a registered copyright *exists*. His failure to do so is fatal to his copyright infringement claim. *See Shabazz v. Sovereign Sweets,* No. 24-1185, 2024 WL 1936258, at *5 (E.D. Pa. May 2, 2024). In fact, a search on the United States Copyright Office Public Catalog reveals no registered copyrights to Plaintiff.[7] "Accordingly, Plaintiff's claim for violations of the Copyright Act is dismissed, as Plaintiff has failed to adequately allege the existence of a registered copyright." *LoDuca v. Pichai*, No. 21-

---

[5] Compl. ¶ 20.
[6] *Id.* ¶ 37 (emphasis added).
[7] In deciding a Rule 12(b)(6) motion, courts may consider documents that are attached to the complaint as well as matters of public record. *Raucci*, 145 F. Supp. 3d at 451 (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). "Copyright registration certificates are public records that may be properly considered on a motion to dismiss." *Id.* (citing *Brown v. S. Fla. Fishing Extreme, Inc.*, No. 08-20678, 2008 WL 2597938, at *1 (S.D. Fla. June 27, 2008)). As noted above, this Court applies the Rule 12(b)(6) standard to dismissal for failure to state claim under Section 1915(e)(2)(B). *See Tourscher*, 184 F.3d 236 at 240.

1691, 2022 WL 2757683, at *4 (W.D. Pa. July 14, 2022) (citing *Johnson v. Carter*, No. 18-447, 2018 WL 2267824, at *2 (W.D. Pa. May 16, 2018)) (dismissing the plaintiff's copyright claim as frivolous where no copyright existed).[8]  Because Plaintiff might be able to show that a registered copyright for the photo at issue exists in the future, the Court will **DISMISS** his copyright infringement claim (Count I) ***without prejudice***.

### C.  Right of Publicity/Misappropriation of Likeness[9]

"[New Jersey's] right of publicity signifies the right of an individual, especially a public figure or celebrity, to control the commercial value and exploitation of his name and picture or likeness and to prevent others from unfairly appropriating this value for commercial benefit." *McFarland v. Miller*, 14 F.3d 912, 918 (3d Cir. 1994) (quoting *Presley's Est. v. Russen*, 513 F. Supp. 1339, 1353 (D.N.J. 1981)).  To establish a claim for misappropriation of likeness under New Jersey common law, a plaintiff "must establish four elements: '(1) the defendant appropriated the plaintiff's likeness, (2) without the plaintiff's consent, (3) for the defendant's use or benefit, and (4) damage.'" *Cozzens v. DaveJoe RE, LLC*, No. 17-11535, 2019 WL 522071, at *3 (D.N.J. Feb. 11, 2019) (quoting *Hart*, 740 F.Supp. 2d at 665 n.5 (D.N.J 2010)).

Under New Jersey common law, a plaintiff can prevail only if they show the use of their likeness "was for a predominantly commercial purpose." *Castro v. NYT Television*, 851 A.2d 88, 96 (N.J App. Div. 2004).  In other words, a defendant must be "seeking to capitalize" on the

---

[8] Plaintiff alleges that X.com's decision to remove the identical content from its site "establishes the validity of Plaintiff's copyright ownership and the unauthorized nature of the use." *Id.* ¶ 27. The Court disagrees.  Plaintiff can establish copyright ownership over the photo at issue by either identifying a registered copyright.

[9] New Jersey and federal courts applying New Jersey law interchangeably refer to these claims using a variety of terms, including appropriation, misappropriation of commercial likeness, and "right of publicity," and the Court will follow suit in this Opinion.  *See Hart v. Elec. Arts, Inc.*, 740 F. Supp. 2d 658, 660 (D.N.J. 2010).

plaintiff's "likeness for purposes other than the dissemination of news or information." *Tellado v. Time-Life Books, Inc.*, 643 F.Supp. 904, 909-10 (D.N.J. 1986). In *Castro*, the plaintiffs alleged in a conclusory fashion that "[d]efendants appropriated plaintiffs' likenesses, images and/or names for commercial profit and advantage," which the *Castro* court determined was insufficient to show plaintiffs' likeness had been used for trade purposes. 851 A.2d at 98. Since then, courts have read *Castro* to stand for the proposition that a media-defendant is not liable for misappropriation of likeness if their use of a person's likeness was incidental. *See Liebholz v. Harriri*, No. 05-5148, 2006 WL 2023186, at *4 (D.N.J. Jul. 12, 2006). Thus, in order to show that Defendants are liable, Plaintiff must show that Defendants used his likeness for commercial purposes.

Here, Plaintiff makes no allegations as to the nature of Defendants' use of his likeness. *See* Compl. In conclusory fashion, he pleads that Defendants have published false and defamatory statements, which have exposed him to "hatred, contempt, ridicule, and obloquy, and have caused him to be shunned and avoided." Compl. ¶ 48; *see also id.* ¶¶ 46-47, 49. But "[u]ntil the *value* of the name has in some way been appropriated, there is no tort." Restatement (Second) of Torts, § 652C(c) (emphasis added). Plaintiff's claim fails given his failure to show Defendants' use of his likeness was for a commercial purpose.[10] Therefore, the Court will **DISMISS** Plaintiff's right of publicity claim (Count IV) ***without prejudice***.

### D. Intentional Infliction of Emotional Distress ("IIED")

To state an IIED claim, a plaintiff must allege that: (1) defendants' conduct was extreme and outrageous; (2) the conduct caused plaintiff severe emotional distress; and (3) the defendants acted intending to cause such distress or with knowledge that such distress was substantially

---

[10] The Court notes that to survive a motion to dismiss, Plaintiff must be able to show that the use of his likeness on spotlighthate.com was for a purpose other than the dissemination of news or information. *See Hart*, 740 F.Supp. 2d at 667-68.

7

certain to occur. *Podlucky v. Lindsay L. Firm, P.C.*, No. 23-858, 2023 WL 4157631, at *2 (W.D. Pa. June 23, 2023), *aff'd*, No. 23-2192, 2024 WL 124292 (3d Cir. Jan. 11, 2024) (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 218 (3d Cir. 2001)).  A plaintiff's claim "will only survive where 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Reedy v. Evanson*, 615 F.3d 197, 231-32 (3d Cir. 2010)).  The plaintiff must also allege that he suffered "some type of resulting physical harm due to the defendant's outrageous conduct." *Reedy*, 615 F.3d at 231 (internal quotations omitted).

Although Plaintiff alleges that he has suffered "severe emotional distress, including but not limited to anxiety, fear, humiliation, and anguish," Compl. ¶ 59, the Third Circuit has held that these claims must be supported by competent medical evidence, *McCracken v. R.J. Reynolds Tobacco*, 821 F. App'x 122, 127-28 (3d Cir. 2020) (citations omitted).  Plaintiff provides no such documentation to support his claims.  His failure to do so warrants dismissal of his IIED claim. *See Podlucky*, 2023 WL 4157631, at *2.

Plaintiff further fails to state an IIED claim because his allegations are conclusory and threadbare.  For example, Plaintiff "does not allege that any doctor or other medical or mental health professional indicated that [he] has suffered severe emotional distress," *Stevenson v. County Sheriff's Office of Monmouth*, No. 13-5953, 2015 WL 512423, at *8 (D.N.J. Feb. 6, 2015), nor does Plaintiff allege in any detail how his physical symptoms have manifested as a result of Defendants' alleged conduct.  Bare and conclusory allegations that a plaintiff suffers from emotional distress are not enough to state an IIED claim; in other words, "[t]here are simply no allegations or facts that actually illustrate or explain the severe emotional distress [Plaintiff] suffered." *Jevremovic v. Courville*, No. 22-4969, 2024 WL 4024144, at *9 (D.N.J. Aug. 30, 2024).

8

Because "conclusory allegations concerning the elements of [an IIED] claim [] are inadequate to state a plausible claim for relief," *Stevenson*, 2015 WL 512423, at *8, the Court will **DISMISS** Plaintiff's IIED claim (Count IV) ***without prejudice***.

E.     **Defamation**

A defamatory statement is one that "harms the reputation of another such that it lowers the defamed person in the estimation of the community or deters third parties from dealing with that person." *Salzano v. N. Jersey Media Grp. Inc.*, 993 A.2d 778, 784 (N.J. 2010) (citations omitted). A defamatory statement may consist of libel or slander. *W.J.A. v. D.A.*, 43 A.3d 1148, 1153 (N.J. 2012). Libel is "'defamation by written or printed words, or by the embodiment of the communication in some tangible or physical form.'" *Gillon v. Bernstein*, 218 F. Supp. 3d 285, 294 (D.N.J. 2016) (quoting *id.*). Determining whether a statement is defamatory is a matter of law to be determined by the court. *Higgins v. Pascack Valley Hosp.*, 158 N.J. 404, 426 (1999).

New Jersey "provides enhanced protection to speech touching on matters of public concern and interest." *Durando v. Nutley Sun*, 37 A.3d 449, 457 (N.J. 2012) (citing *Senna v. Florimont,* 958 A.2d 427 (N.J. 2008)). New Jersey courts have applied the actual-malice standard[11] to protect "both media and non-media defendants who make statements involving matters of public concern, regardless of whether the targets of the statements are public figures or private persons." *Id.* at 458 (citations omitted). "Speech deals with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (citations omitted). "Discourse

---

[11] The actual malice standard requires a plaintiff to "establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 516 A.2d 220, 233 (N.J. 1986).

9

on political subjects and critiques of the government will always fall within the category of protected speech that implicates the actual-malice standard." *Senna*, 958 A.2d at 444. The alleged defamatory statements in the Complaint concern the Israeli-Palestinian conflict, which the Court considers to fall under the umbrella of discourse on political subjects. Because the statements at issue regard a matter of public concern, the actual malice standard applies to Plaintiff's claim.

To state a defamation claim against a defendant that publishes information touching on a matter of public interest or concern, a plaintiff must prove: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the statement was communicated to another person (and was not privileged); and (3) that the defendant published the defamatory statement with actual malice." *Durando*, 37 A.3d at 457. To "establish that the publisher knew the statement to be false or acted in reckless disregard of its truth or falsity," *Dairy Stores*, 516 A.2d at 233, "there must be sufficient evidence that the named 'defendant in fact entertained serious doubts as to the truth of the publication.'" *Durando*, 37 A.3d at 459 (quoting *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)). Crucially, the plaintiff must show actual malice at the time of publication. *Boone v. Newsweek LLC*, No. 22-1601, 2023 WL 2245104, at *6 (E.D. Pa. Feb. 27, 2023) (citing Rodney A. Smolla, Law of Defamation § 3:79 (2d ed.)); *New York Times Co. v. Sullivan*, 376 U.S. 254, 286 (1964) ("The statement does not indicate malice at the time of the publication.").

At the motion to dismiss stage, a plaintiff cannot rely on "a bare conclusory assertion that [a defendant] 'knew and/or reasonably should have known that the statement was false.'" *Darakjian v. Hanna*, 366 N.J. Super. 238, 248 (App. Div. 2004). Instead, a plaintiff must plead facts that show a defendant "actually doubted the veracity' of [their] statements." *Lee v. TMZ Prods. Inc.*, 710 F. App'x 551, 560 (3d Cir. 2017) (quoting *Durando*, 37 A.3d at 457). In other

words, a plaintiff must "allege sufficient particularized facts to suggest that . . . [the statement] was published with knowledge of its falsity or a reckless disregard for the truth or falsity of the reported statement." *Darakjian*, 366 N.J. Super. at 250.

Here, Plaintiff alleges in conclusory fashion that "the statements are false and were published with knowledge of their falsity or with reckless disregard for the truth." Compl. ¶ 47. New Jersey courts routinely dismiss defamation actions where a plaintiff makes threadbare allegations regarding a defendant's knowledge of a statement's veracity. *See Jevremovic*, 2023 WL 5127332, at *7 (collecting cases). Plaintiff does plead that he notified Defendants that the statements were false and defamatory, and in his view, their failure to remove the statements from spotlighthate.com demonstrates actual malice. Compl. ¶ 50. However, "'actual malice cannot be inferred from a publisher's failure to retract a statement once it learns it to be false.'" *Boone*, 2023 WL 2245104, at *6 (quoting *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013)). This is because a plaintiff must show actual malice was present *at the time of publication*. *See id.* (citing *Sullivan*, 376 U.S. at 286). Plaintiff's failure to plead any facts to support his allegation that Defendants knew, at the time they published his statement, that it was false, warrants dismissal of his defamation claim. Therefore, the Court will **DISMISS** *without prejudice* Plaintiff's defamation claim (Count II).

  F.  **Negligence**

Plaintiff's negligence claim is predicated on the same facts that underlie his defamation claim. *See* Compl. ¶¶ 61-64. But this is not allowed in New Jersey. *See Gaber v. Mortg. Asset Rsch. Inst., Inc.*, No. 08-4926, 2010 WL 3039885, at *3 (D.N.J. Aug. 3, 2010) ("Where a plaintiff claims that the communication of false information has injured his reputation, the plaintiff is precluded from seeking redress under a theory of negligence. Instead, the proper cause of action

11

is defamation."); *see also Container Mfg. Inc. v. CIBA-GEIGY Corp.*, 870 F.Supp. 1225, 1236 (D.N.J. 1996)). Indeed, a plaintiff is precluded "not only from suing in negligence for harm caused by the communication of defamatory statements, but also from suing in negligence for any acts that proximately underlie the communication of defamatory statements." *Gaber*, 2010 WL 3039885, at *3. This is because courts seek to preclude plaintiffs from "circumvent[ing] the strictures of the law of defamation . . . by labeling its action as one for negligence." *Dairy Stores, Inc. v. Sentinel Pub. Co.*, 465 A.2d 953 (Law Div. 1983), *aff'd*, 486 A.2d 344 (N.J. 1986). The Court will therefore **DISMISS *with prejudice*** Plaintiff's negligence claim as Plaintiff is barred from pursuing it as a matter of law.[12]

### G. Injunctive Relief

Plaintiff has requested the Court grant him a temporary restraining order ("TRO") and a preliminary injunction. Compl. ¶¶ 65-70. "Preliminary injunctive relief is an 'extraordinary remedy, which should be granted only in limited circumstances.'" *Ferring Pharms., Inc. v. Watson Pharms., Inc.*, 765 F.3d 205, 210 (3d Cir. 2014) (quoting *Novartis Consumer Health, Inc. v. Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cty.*, 40 F.3d 645, 647 (3d Cir. 1994). The decision to grant such relief is within the discretion of the district court. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). In order to obtain a TRO, the moving party must show:

> (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured ... if relief is not granted .... [In addition,] the district court, in considering whether to grant a preliminary injunction, should take into account,

---

[12] The Court's holding does not preclude Plaintiff from bringing a negligence claim grounded on different facts. However, Plaintiff cannot bring a negligence claim based on the same facts that underlie his defamation claim.

12

>  when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest.

*Reilly v. Cnty. of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (quoting *Del. River Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919-20 (3d Cir. 1974)).

The movant bears the burden of establishing "the threshold for the first two 'most critical' factors . . . . If these gateway factors are met, a court then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179. A court may issue an injunction to a plaintiff "only if the plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1427 (3d Cir. 1994) (citing *Opticians Ass'n v. Indep. Opticians*, 920 F.2d 187, 192 (3d Cir.1990)); *see also P.C. Yonkers, Inc. v. Celebrations the Party & Seasonal Superstore, LLC*, 428 F.3d 504, 508 (3d Cir. 2005) ("The burden lies with the plaintiff to establish every element in its favor, or the grant of a preliminary injunction is inappropriate.")

As shown above, Plaintiff has failed to show he would prevail on the merits as to any of his claims. Thus, the first factor weighs against granting injunctive relief.

The second factor in determining whether to grant injunctive relief "requires the moving party to show that he is 'more likely than not to suffer irreparable harm' absent the relief requested." *Jose M. C. v. Tsoukaris*, 467 F. Supp. 3d 213, 226 (D.N.J. 2020) (quoting *Reilly*, 858 F.3d at 179). Plaintiff alleges he is "is suffering irreparable harm due to the ongoing publication of the defamatory content, which cannot be adequately compensated by money damages alone, including damage to his reputation, employment prospects, and mental well-being." Compl. ¶ 67. But as one court explained, "[a]s for injury to reputation, that chicken has already flown the coop. If [Plaintiff's] allegations are true, [D]efendants have already disparaged [Plaintiff], and [Plaintiff]

13

[has] repeated the alleged disparaging statements in [his] complaint." *Guttenberg v. Emery*, 26 F. Supp. 3d 88, 103 (D.D.C. 2014). Thus, any adverse effects on Plaintiff's personal life can be redressed through monetary damages. *See id.* If harm to one's personal reputation constituted irreparable harm "defamation plaintiffs would regularly obtain preliminary injunctions against their defamers rather than seek monetary damages." *Id.* (citing *Sampson v. Murray,* 415 U.S. 61, 91-92 (1974)) ("Assuming for the purpose of discussion that respondent had . . . supported the claim that her reputation would be damaged as a result of the challenged agency action, we think the showing falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction. . . ."). Plaintiff offers little more than the aforementioned conclusory allegation that he will suffer irreparable harm, and therefore, has failed to show this is the "extraordinary" defamation case in which monetary damages are inadequate. *Puello v. Crown Heights Shmira, Inc.*, No. 14-959, 2014 WL 3115156, at *2 (M.D. Pa. July 7, 2014).

Having determined that Plaintiff fails to establish the two most important factors (likelihood of success on the merits and irreparable harm), the Court will not address the final two factors of the TRO inquiry. *See Jose M. C.*, 467 F. Supp. 3d at 227 (citing *Carmen R. v. Decker*, No. 20-3875, 2020 WL 2029337, at *13 (D.N.J. Apr. 28, 2020) (same)). Therefore, the Court will **DENY** Plaintiff's request for a TRO and preliminary injunction.

      H.     **Disability Accommodation Request**

Finally, Plaintiff requests certain accommodations from the Court due to certain physical disabilities. Compl. ¶¶ 11-15. The accommodations generally pertain to oral proceedings before the Court. Given the Court's decision to dismiss the Complaint for failure to state a claim, the Court will defer its decision of Plaintiff's request until a future date. Should Plaintiff file an

amended complaint, and should that amended complaint pass the Court's screening pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court will decide Plaintiff's request then.

IV.     **CONCLUSION**

For the foregoing reasons, the Court will **GRANT** Plaintiff's IFP application and **DISMISS** the Complaint for failure to state a claim, in part *with prejudice* and in part *without prejudice*. The Court will allow Plaintiff **60 days** to file an amended complaint that cures the deficiencies set forth herein. An appropriate order follows.

Dated: July 2, 2025

_____
Evelyn Padin, U.S.D.J.

15